May it please the Court, my name is Jeffrey Rotwein. I am the attorney for the appellant Cynthia Curran in this matter. Let me start out by saying that, in preparing for this argument, it occurred to me what really is at the center of the issue before the District Court and now I think on appeal to this Court, is what happened with the 401k contribution, employee contribution and the employer contribution money from Barrington. What happened to it? And there is evidence that there was a Schwab account that was established, but there is also an indication in the records, namely the adoption agreement, which is Exhibit 10, to the government's submission before the District Court and page 226 of the E.R. and 227 of the E.R. that there may have been other accounts, other investment accounts, Schwab and or other investment accounts. So what happened with the money that either was supposed to go into those accounts, one or plural? What happened within those accounts to the money? How was it invested? Where did it go? How was it transferred? And perhaps most importantly, whether or not the money was withdrawn from any of those accounts and by whom? Now, the government relies very heavily, at least in pages, actually before the District Court and repeated here on pages 17 and 18 of the reply brief, on Schwab account statements. Now, that clearly would show what happened to the money, what was invested, what was deposited, what happened with the funds when they were in the accounts, where the money was withdrawn and by whom. None of those account statements were relied on by the District Court, and none of them are in the E.R. or the supplemental E.R. by the government here. So we really don't know what happened. The District Court didn't really know. And she was very specific about what she was relying on to make her finding as to relevant accounts. She identified exhibits, she identified pages, and she was very detailed in particular about what she was relying on. And what she relied on did not include the account statements by Schwab or the other investment accounts, if there were. And that raises another huge gap or huge hole in terms of the questions that are left open as to whether or not there were other investment accounts. Now, there was an adoption agreement that's attached, but that adoption agreement, as well as other declarations that the government supplied referring to other instruments or other documents that pertain to the obligations of the trustee who is to be appointed, what their role and powers were with respect to the funds, they're not there. All we have is the adoption agreement that leaves open a lot of holes, a lot of questions about what Ms. Kern's role was as a trustee, if there are other trustees, was there an election made to invest in accounts other than Schwab, and so on. And I detail that in my opening statement, my opening brief, as to the records, the documents that really require production to give a full picture as to what Ms. Kern was obligated to do, if there are other people, and so on. And so the problem ñ Well, just a minute, Counselor. And I guess I'm going back to I have to look at what the district court did, whether they erred in calculating the loss amount. It seems to me that there are facts supporting her decision in this record. You'd agree with me, wouldn't you, that the returns from the Department of Labor from 1997 to 2002 have account balances and they're signed and filed by the defendant? They weren't produced in the district court. But there are such returns, correct? Well ñ Correct? Answer me. No. The district court ñ Was there returns filed with the Department of Labor from 1997 to 2002? I'm assuming there were, Your Honor, but we have to rely on what was presented to the district court as evidence and what the district court relied on for making the finding of relevant conduct, and they're not in the record. And, I mean, I'm assuming there were. I mean, I don't want to talk off the record about what I did in discovery with the United States attorney during the case, but what has ñ what's critical here is what the record ñ how the record ñ what the record was before the district court and what the district court relied on to make her findings. And there are no 5500 IRS forms. So, respectfully, Your Honor, I have to ñ I have to disagree because we have to rely on ñ You have to disagree with what? That she even filed forms? No. I have to disagree that there's ñ that there's evidence in the record before the district court. Is there evidence in the record that there were $356,922 that the Department of Labor should have had in 2004? Well, the Department of ñ There is evidence of that, isn't there? There is evidence that that was the money ñ Did you answer my question? No, the Department of ñ Is there evidence that there was $356,922 which should have been in some account with the Department of Labor in 2004? And I have to say no. With a qualification, Your Honor. You're saying with the Department of Labor and the accounts. They're separate. The money doesn't go to the Department of Labor. It's ñ I know it doesn't go to the Department of Labor. I'm talking about did the Department of Labor have in its records from 2004 that there should have been $356,922? Yes. And when looking at the accounts, was there any money in the accounts? There was no evidence presented as to what was in the accounts or what was not in the accounts. That's the failure here of proof, Your Honor. There were no Schwab account statements or statements from other investment accounts if there were any. And that's a big if. That's the flaw here in the evidence presented before the district court and I think now on appeal. And we kept coming back before the judge, submissions by the U.S. attorney. She kept saying, it's not sufficient. You haven't given me a roadmap. I don't know what these records are. How about these records? And then we come back in. There's no problem that there are, there is the testimony of account managers and employees that document the defendant was in control over these accounts, correct? Correct. There's evidence in the record to suggest that. Perhaps it suggests, but there. Well, but just a minute. There's testimony from account managers and employees that she was in control of the accounts. No. Yes. You're suggesting there's no evidence of that? I have to answer the question. You do. Okay. And you haven't yet. I'm trying to, with all due respect. I think the declarations, Your Honor, show that my client was in charge of preparing all the forms, the annual 401k statements, the W-2 forms, the employee documents, and so on, and that she was doing the investing. And there is also evidence in the record that she admits she stole money to keep the company afloat. She admits that she stole $17,900. She admits that she stole money to keep the company afloat. Yes. All right. Yes, but. Then the government need not prove what she did with the money. No, I know. The government only needs to prove she took it. She took $36,000. That's what she admitted to. But now we then go to, is there a sufficient conduct that's part of the same course of conduct or common scheme, and did the district court come up with a conclusion which should be affirmed on appeal given the standard of review? Yes. That's the question after we get all these facts in the record as to what there is there. Okay. And then I have a tough time coming up with how I then undo her. Well, you undo her because all you say all these facts, quote, unquote. But what facts? There's no evidence, Your Honor, that she failed to deposit X amount of dollars into investment accounts with Schwab or other accounts, other accounts, that she had any control over the investment or the management of those accounts, Your Honor, with Schwab and the other investment accounts, or that she withdrew it. There's no evidence of it. We don't have – I mean, it would have been easy, I suppose, if we had the account statements from Schwab, which the United States attorney, you know, referred to in the opening brief – excuse me, in the opposition brief, pages 17 and 18. I think that's critical. All these other facts. She admitted, I took 17-9 in December of 2003, and then I took another 19-3, I think, in December of 2004. That's what she said. And those are specific dates, Your Honor, specific takings. Now, to then tag her with takings back to 97, 97 through to 04, and then from 05 and 06, I mean, let's, for example – I'm going to divert for a minute – to 05. The United States attorney says that in 05 the district court relied on W-2 forms. Well, take a look at the W-2 forms. They're an exhibit – they are in Exhibit 17. There are five. Five W-2 forms. There are 13 employees. You'll look at the W-2 forms. I can't – there's nothing on there indicating what went into the 401 accounts. There's nothing on those forms. Where – and then for 06, the government says that the district attorney – that the district court relied on, and the district court actually said, I'm relying on pay stubs. Where are the pay stubs? How many employees? If you look at that, there are only W-2 forms for 2005. And I'm highlighting that because I think it's an example of there's just too many gaps or too many questions. Well, perhaps. I mean, the problem with your case – I mean, I understand your argument on the gaps. You made the election not to put on any affirmative evidence to the contrary and simply rely on the government's failure to sustain its burden of proof. So we're left on a clear air standard of review on the facts of looking at the district court record and saying, well, there's enough to sustain it based on this then record. Understanding, of course, that they are – that the burden is high on the government of clearly convincing. And that's – I think that's the task force. And then we – at the end of the day, if we decide we agree with you and send it back, it seems to me on an open record resentencing, you probably end up in the same position. Maybe. There's nothing to suggest – there's nothing to suggest to us, except for speculation on this record, that there's another answer, is there? You're relying on gaps, not affirmative proof. There's nothing here in the record that suggests an alternate. No, no. The defense didn't supply any affirmative evidence. But, but, but. Not that you need to, but. She's entitled then and she's entitled now to scrutinize the government's proof whether or not they met clear and convincing evidence. And whether or not the record would be the same after a remand and a resentencing, who knows. I mean, again, that's speculation. Whether or not there are other answers in the record, who knows. But the problem is there's no proof that she took any of this money other than $36,000. That's the problem here. Yes, she was in charge of all – you know, preparing all the statements and entering all the data and the 401k reports and so on. Granted, she was dealing with NPIN, the third party administration. I better stop if I don't want to do any reply. Clearly, she was doing that. There's no dispute about that. And it's clear the numbers that the employees should have had for their 401k contributions. But that doesn't answer the question that my client, how many other people were responsible for managing the funds in the Schwab account, Schwab and other accounts? Who knows? Did she withdraw it? Did other people withdraw it? Counsel, but there is evidence, isn't there, that she at least was viewed as being responsible, primarily responsible. The other trustee said they just needed another person. I didn't have any responsibility at all. And so we do know that she was very much viewed as the person who had all the responsibility. And the money, I think you would agree, is gone. Is that right? I don't know. Judge, and I say that. I'm not being facetious. There was no evidence put on that at the time of the sentencing there was no money. And there was no account statements from Schwab at the time of the sentencing or even in 2006, the last date. We don't have any account statements. We don't know if there's money. Is it in another account? Is it still in Schwab? Or, A and B, who took it out? Or was it put in? That's the problem. It's just such a fundamental, basic failure of proof here that I think it rises to the level of clear error, if clear error is the standard on appeal. Let me ask you a different question. Do you still maintain that the Court abused its discretion regarding restitution? Well, it abused its discretion. I do. Are you talking about the supplemental briefing? Or are you talking? I think that if the Court erred by finding relevant conduct beyond $36,700, then I think that the Court would have to make that argument. All right. But in general, you had a different argument, and that was that the Court didn't take into consideration, you know, her circumstances and so forth. Right. You're not making that argument. Well, I'm not going to make it here, but I'll submit it on the briefing, Your Honor. I mean, I don't want to – frankly, I'm running out of time here. I have 46 seconds for a rebuttal, which isn't much. But, yes, I'm submitting that argument, Your Honor, on the briefing, if I could. Thank you. Thank you very much. We'll hear from the government. May it please the Court. Good morning, Your Honors. Owen Mardekin for the United States. There was a wealth of evidence from which the district court could draw to find the amount of loss in this case. I'd like to begin because I think it's – there is a large record in this case, and I think it's important to clarify, especially given some of the representations that Appellant's counsel just made, exactly what is and is not in the record. To begin with, Appellant's counsel made the point quite strenuously that the returns to the Department of Labor were not made part of the record and were not given to the district court. That's incorrect. There was a 738-page binder that the government provided to the district court before the November 09 sentencing hearing in this case. There was a table of contents filed separately for that binder that is all in the record here. And that actually did include excerpts from the Form 5500s from the years 1993 through 2004. So those documents were in the record. They were given to the district court. And I think she makes clear in her statements from the bench that they were considered by her in those cases. And where are they in the excerpts that you provided? They are not in the excerpts of record. But they are in this large binder that was provided to the district court. That we don't have access to. I understand that, but my point is – I mean, that's the problem when we're talking about evidence and facts, and it's not part of the excerpts. It's very hard for us to evaluate that based on your representations of a document we can't see. I understand that. Although, what is in the excerpts of record is her admission to the government's proffer that she falsified the Form 5500. So she does admit that. I mean, I realize that's always a challenge of whether you put in too much or too little on excerpts. But, you know, when it's a critical document that now it's contested what was introduced or not introduced, it's very difficult for us to gauge that on a field. Understood, Your Honor. Did she say she falsified 5500s for all the years in question? She did not. She said that she falsified – this was at her plea colloquy, and she admitted to falsifying them for the two years that she was guilty to. Right. That's two years. That's two years. What about the others? Well, first of all, the two years to which she pled guilty are 2003 and 2004. For 2003, she admits to falsifying documents to conceal thefts in 2002. So she's actually admitting to a course of conduct over three years. For the other years, we have the discrepancy between what she said, not just to the Department of Labor in those Form 5500s, but more importantly to her own employees through the annual statements, each of which are actually in the excerpts, in this Court's excerpts of record, of what was supposedly in their accounts. And the employees in their declarations corroborate that that's what they thought was in their accounts. So for those other years, there are amounts that she's representing to her employees, also to NPIN, which was the third-party administrator of the plant, as to what was in these accounts. That's apart from what she was even telling the Department of Labor. So you're saying that at least this shows that she – you have evidence that she knew that what she was representing was in the accounts, was not in the accounts. Was not in the accounts. Correct. All right. Yes. And corroborated by the employees. And I think it's surprising that the appellant makes the argument that there's no evidence that the money was gone, because certainly there are statements from victims who say all of a sudden they had no more retirement savings. So the money was not there. I'd like to talk briefly about the Schwab statements. The Schwab statements are eight years of bank statements. Those were not produced to the district court, because as your honors intimated, it's difficult to tell sometimes how much or how little to provide to the court. We certainly didn't want to provide eight years of bank statements to the court. What we did provide to the district court and what's in the excerpts of record is an authenticated summary of what the Schwab balances were at each year end at issue here. And that's at the supplemental excerpts of record, page 61. That's authenticated by the investigator in this case, who said under penalty of perjury, he went through the statements, and this is what was in the Schwab bank account for the end of those – each of those years. But you didn't put in the underlying data before the district court. We did not. What we did do, however – I don't understand that, but I guess – I mean, it's one thing what you give us as excerpts on appeal, but, you know, eight years of statements isn't all that much, really. I'm sorry? Eight years of statements isn't all that much when you're trying to prove up this kind of damage. Well, it was frankly substantial at a point when the district court had said she didn't want to be inundated with documents. What we did do at the district court's request at the January hearing, and there's some discussion of this at the supplemental excerpts, 17 is where it starts, is we brought all those statements with us to the court. And the district court had asked us to do that so to make it no question to the defendant what we were relying on and to allow the defendant time to look at those statements and object to them if necessary. So it's clear from that transcript that we actually brought all those statements with us to the January sentencing hearing and, in fact, said so in open court. How does that help you here if we find the statement significant? Well, because it simply authenticates that we – I know you had them. You produced them. You didn't put them into evidence. We can't consider that. We can consider the authenticated summary, and that may be enough. Yes. But, I mean, in fact, you brought them in to look. Understood. And I think it is enough because we allow the defense the opportunity, not just through discovery, but there in open court to match up the summary with the statements and to show if there was any deviation from them or any reason not to believe them. Now, I questioned counsel pretty heavy about the forms from the Department of Labor because it seems to me that what you're really asking us to do is compare the evidence of disparity between that reported to the Department of Labor and the account balance in Charles Schwab. So even if I say you provided the correct amount of evidence to the district court by just the summaries, how do I get the other side of the equation? The other side? What went to the Department of Labor? Where does the district court come up with it? That is in the binder of evidence that was provided. Well, but the binder of evidence, I don't see any place in the district court's opinion, frankly, that the Department of Labor calculations were included in that calculation. Well, there is in the record, the record actually shows that the form 5500s were all, excerpts from those forms were all included in the binder. There's a table of contents. Well, they're in the binder, but did the district court really consider them? Yes. I mean, she discusses the form 5500s, and it's in the January sentencing hearing where she talks, it's actually in the January sentencing hearing, not the final February sentencing hearing, where the district court decides upon an eight-year course of relevant conduct. So by the beginning of the February hearing, she's already made that decision. And it's during the January hearing that she discusses going back to the binder, looking at everything in the binder, and the divergence between what was reported to the Department of Labor and what was reported to, or what was actually in the Schwab statements. And I'd say that in addition to that, we have not just what she reported to the Department of Labor, but what she reported to Kathleen Larson, who is the representative at NPIN, who actually prepared the returns based on data that she got from Ms. Curran, and what she reported to her own employees. And all of that adds up to showing that she was representing to everyone, not just the Department of Labor, but everyone, that there was a certain amount of money in these accounts. And if she did that, it's appropriate for us to infer then that she took the money because she knew that the amount of money that was in the account was not what was represented? I think it's appropriate to infer that given that she admitted to stealing the money for three of those years and that the course of conduct shows the same thing happening for a total of eight years. So I think that it was certainly not clear error for the district court to say, well, here's your admission that you've stolen this money in two years, that you lied about stealing to conceal that you stole it for a third year, 2002, and that the evidence is all consistent with you having done this over a much longer period of time. And even though the defense claimed in the district court and does so here on appeal, well, we can't, the court can't trust any of her documents because she's admitted to being a liar. The fact is that those documents are all corroborated by the employee declarations who said consistently, we thought that these statements were correct because we know what was coming out of our paycheck or we had elected to come out of our paycheck and what was supposed to be going into that account. And so we thought that these accounts were, that they were correct. We had every reason to believe them. And so it came as really quite a shock when all of a sudden there was no money there. So what do we do for evidence that this money may have been going in other accounts? I, well, frankly, I think it is. I mean, that's counsel's argument that there are so many accounts and the Schwab account is not the only account and there are other accounts and therefore nobody weighed any evidence that it wasn't in some other account. Well, it's sheer speculation to say that there are any other accounts. There is only one account that is named in the record and that is at, in the, I'm sorry, it's the agreement that is in the 401K agreement that lists Ms. Curran as the trustee. It also lists the Schwab account as being the trust account. Now, were there other accounts at Schwab? Sheer speculation. And, in fact, it would be amazing to believe that, that if the defendant had this amazing defense, the fact that the money wasn't lost at all, it was actually moved to some other account, when she was, in fact, the person who was in charge of depositing this money, that she wouldn't have brought that forward. I mean, this prosecution could not have proceeded if she had said, oh, you just looked at the wrong account. I actually put all this money in account B, not account A. The fact of the matter is that she was in charge of this account. It's not just what she pled to, but it's what all the employees said about her. She was in charge of the account and the account was empty long after, or long before, she was reporting to other employees and to the government that it was filled with pension money. Counsel, you started out by saying there's a wealth of evidence. And, of course, you acknowledge that the standard is clear and convincing. Is that right? It is, Your Honor. Now, I will say, I think that's – I believe it to be a gray area in this Court, whether it would be preponderance of the evidence or clear and convincing. The defense had actually admitted a preponderance of the evidence standard. However, I felt that because there was somewhat of a gray area, I filed a notice with the Court saying that I believe the Court should follow a clear and convincing standard. All right. I felt comfortable with that, and I do, that there's sufficient evidence to meet that standard. Now, there are three sentencing hearings, right? Three substantive sentencing hearings. Yeah, correct, Your Honor. And perhaps some other ones, but you say substantive ones. Yes. So when you look at this, you know, you come one day and you come back another day and you come back a third day, the question is, is the case that strong or was there kind of a struggle to get it over the threshold? Do you acknowledge that it was not the strongest case? I wouldn't acknowledge that. I think it's more of a — I don't know how else to put it other than a Goldilocks and a Three Bears problem, which is when we went to the initial non-substantive sentencing hearing in September of 2009, the district court said, I need the documents. There's not — all you're giving me is summaries, and I really need to see the documents, which is why we had filed a 740-page binder with the Court before the November hearing. At the November hearing, the district court said, this is way too much for me to go through on my own. I need a road map. Now, I began to provide, and this is the transcript from the November record, November hearing is at Appellant's Supplemental Excerpts of Record 7, A.S.E.R. 7. I began to provide that road map with respect to a single victim. And the district court said at the end of that, I think you can provide that for one victim. I'm convinced that I understand these documents for this one victim, but I don't want to spend, I think she said, 10 hours here going through every single victim. I want you to provide a road map. So we provided that road map, and the January hearing at Supplemental Excerpts of Record 17 is where the court was actually ready to pronounce sentence. So she was satisfied. She understood the evidence. She had all she needed, and she was ready to pronounce sentence. However, the defendant at that hearing raised a lot of very specific objections to certain calculations of loss amount and simply raised them on the record. And the court said, well, the defendant wanted an opportunity to brief those objections. And so it was actually at the defense request that there was a third hearing set, actually a fourth hearing set in February of 2010. So the court was ready in January to pronounce sentence, but pursuant to a defense request, had asked for the following hearing. So I see that I'm out of time. I'll just say in closing that I think there was ample evidence to find, based on a clear error standard review, that the district court sentence should be affirmed in all respects. Thank you. Roberts. Any further questions from the panel?  Okay. Thank you, counsel. Your rebuttal. Thirty-six seconds. Okay. I'll talk fast. The summaries, which I think are in the excerpt of record, page 233, and the supplemental excerpt of record by the government is page 61, are just charts. You know, without any authentication, they were admissible before the district court. They're inadmissible now. Mr. Mardikin mentions a declaration by Mr. Payne. That's not in the record. That wasn't relied on by the district court. It's not in the ER or the SCR. So those summaries are irrelevant. Were there objections to them? Yes. And I indicated them. I submitted them. I'm out now. Okay. Can I have any more time, or is that? Sure. I'll give you 30 seconds. All right. Thank you. Yes, I did object. And I went through very, very detailed. Every time there was a submission focusing on the page and listing the specific objection, Mr. Mardikin mentions the January sentencing hearing. There were several hearings, but you've got to – we've got to focus on the February 10, 2010 sentencing hearing, not what Judge Hamilton may or may not have said in January. My client knew what was in the accounts. There's no evidence that she knew what was in the accounts. There's no evidence that she was responsible for controlling those accounts, that she had the authority to put money into them, that she had authority to regulate or direct investments within them, or, perhaps most importantly, that she had authority to withdraw them. And, again, you know, it would be easy, I would think, as Judge Thomas mentioned, to provide eight years of account statements, particularly when you've got something rather important here. My client's freedom from custody. Present the documents. He presented 738 documents in one binder, October 8 of 2009, and, you know, provide another 15 or 20 or 30 or 50, if they're important, and they're clearly important, because it doesn't fill the picture. We've got a very spotty picture here. And, frankly, clear and convincing evidence is – was not shown there, and I think the Court committed clear error by finding clear and convincing evidence. Let me see. Okay. There were other – I think it was a question raised about other accounts. Well, it's mentioned in the adoption agreement, which, again, is only part of all of the requisite documents for managing and handling the 401k form. ER 230, paragraph 12, mentions, you know, that the trustee or the employer has the authority to identify and designate other investment accounts if there's an election. Was there an election? Were there other accounts? These are all just big, huge gaps. That's the problem. Counsel, now you've – Okay. Now I'm over. Okay. I feel like I'm arguing before a jury. Any further questions on the panel? Thank you for your argument. Thank you very much. The case is just arguably submitted for decision.
judges: Oliver, Thomas, Smith